Lee, J.
Three grounds- have been assigned by-the-appellant’s counsel, upon some; one of which it-is-insisted he is entitled to the. relief sought by his bill. These are:
First, .that the deeds of the 7th :of March 1837 are-fraudulent and void as to the creditors of Platoff Zane,. and that the appellant is entitled to impeach them as such, whether he is to be regarded as a prior or subsequent creditor, in reference to the time of their execution.
Secondly, that in point of fact his debt was a preexisting debt, and is, therefore, in terms provided for by the deeds.
Thirdly, that under the provisions of said deeds Platoff Zane took such an interest in the subject thereby conveyed as would be liable to subsequent creditors, and that the appellant is entitled as such to subject the same to satisfaction of his-debt.
As to the first ground: Nothing is better settled than that a voluntary conveyance, which interferes with or breaks in upon the rights, of existing, creditors, *558 will not be permitted to take effect to the prejudice of their just demands : and this according to many of the cases, without regard to the amount of the debts, or the extent of the property settled, or the circumstances of the party, Fitzer v. Fitzer, 2 Atk. R. 511; Taylor v. Jones, 2 Atk. R. 600; Chamley v. Lord Dunsany, 2 Sch. & Lef. 690, 714; Reade v. Livingston, 3 John. Ch. R. 481; Thomson v. Daugherty, 12 Serg. & Rawle 448; Howe v. Ward, 4 Greenl. R. 195; Hopkirk v. Randolph, 2 Brock. R. 132; Backhouse v. Jett, 1 Brock. R. 500, 511; Ridgway v. Underwood, 4 Wash. C. C. R. 67; Jackson v. Seward, 5 Cow. R. 67; O’Daniel v. Crawford, 4 Dev. Law R. 197.
On the other hand, numerous cases are to be found, which in effect maintain the doctrine, that a conveyance, although voluntary, may be good, under circumstances, even as against existing creditors; and that a party’s being indebted at the time is but an argument of fraud, the question still being in every case, whether the conveyance is a Iona fide transaction, or a mere device to delude and defeat creditors. Cadogan v. Kennett, Cowp. R. 432; Doe v. Routledge, Ibid. 705; Richardson v. Smallwood, 1 Jac. R. 552, 4 Cond. Eng. Ch. R. 202; Gale v. Williamson, 8 Mees. & Welsb. 405; Verplank v. Sterry, 12 John. R. 536; Wickes v. Clarke, 8 Paige’s R. 161; Seward v. Jackson, 8 Cow. R. 406; Hinde's lessee v. Longworth, 11 Wheat. R. 199.
The subject is one involving the enquiry into the relations which the two great classes of creditors, prior and subsequent, occupy in relation to a voluntary settlement. And .the question is whether they occupy a common ground, so that a conveyance which would be adj udged fraudulent as to the former, would also be held to be fraudulent as to the latter; or will a discrimination be made, the effect of which will be to withdraw from enquiry in the case of a prior creditor the various circumstances attending the execution .of *559 the conveyance, such as the nature of the consideration, the value of the property settled compared with that, if any, retained, the extent of the indebtedness, &c. &c; all of which are in the case of a subsequent creditor, most proper to be consideredj and upon which, in order to succeed, he must be able to fix the imputation of fraud in the absence of direct and positive proof of the intent. Chancellor Kent clearly recognizes a distinction between the two classes. In the case of the prior creditor, he considers that any enquiry into the amount of debts existing at the time would be embarrassing if. not dangerous y aiid;he regards it as wholly unnecessary, considering the debtor as absolutely disabled from; making any. voluntary settlement to- the- prejudice of any existing, debts y and such, he says, is the clear and uniform doctrine of the cases. Reade v. Lovingston, 3 John. Ch. R. 481, 500. Judge Story, on the other hand, evidently considers him a® carrying the doctrine too* far. He thinks that mere indebtedness would not per se, avoid a voluntary conveyance even as to subsisting creditors, unless the other .circumstances are such as justly to create a presumption of fraud. 1 Story’s Eq. Jur. § 360 to. 365, inclusive. - The opinion of Chancellor Kent is supported by that of Mr. Atherley, in his work on Marriage Settlements, at p. 212; and numerous authorities-are cited, which he regards as fully sustaining it. In support of his views, Judge Story refers to many cases-which he regards as necessarily tending to maintain them; which will be found in the notes to the sections-above cited.
The question has been the subject of a most animated and elaborate discussion between two of the former-judges of this court in the cases of Hutchison v. Kelly, 1 Rob. R. 123; Bank of Alexandria v. Patton, Ibid. 499; and Hunters v. Waite, 3 Gratt. 26. Judge Baldwin strenuously combats the opinion of Chancellor Kent- *560 He maintains that prior and subsequent creditors stand up011 common ground'; and that although indebtedness the -time of a voluntary settlement may create a qggaj presumption against its validity, <yet such presumption is only prima'facie, and not conclusive, depending upon the particular circumstances-of the case. Judge Stanard takes the opposite ground; he maintains the correctness of Chancellor Kent’s'opinion, and argues that prior and subsequent creditors stand upon different grounds; that their rights have different degrees- of merit, and-that a voluntary settlement might well be held invalid -and ineffectual as against the claims of -existing creditors, which would be entirely impregnable to any assault.made-by a subsequent creditor. The subject is most fully explored in -the opinions of these eminent j uiists, and1 the whole store of argument and authority that ’-might be brought to bear upon it well nigh exhausted. But while I have formed for myself an opinion on the point, I yet deem it one not material to be decided in this cause. I understand both these judges as agreeing that in the case of a subsequent creditor, a settlement cannot be impeached on the mere ground of its being voluntary, if there be no actual fraudulent view or intent at the time it -is made. To let in such a creditor, it must be shown that-there was mala'Jides or fraud in fact in the transaction. And if this be shown, whether the actual fraudulent intent relate to existing creditors or (as it may) be directed exclusively against subsequent creditors, the effect is the same, and the subsequent creditor may upon the strength of it successfully impeach the conveyance. -‘Such is, € think, the clear result of all the authorities. Stileman v. Ashdown, 2 Atk. R. 477; Walker v. Burrows, 1 Atk. R. 93; Russell v. Hammond, 1 Atk. R. 12; White v. Sansom, 3 Atk. R. 410; Kidney v. Coussmaker, 12 Ves. R. 136; Holloway v. Millard, 1 Madd. R. 414; Shaw v. Standish, 2 Vern. R. 326; *561 Richardson v. Smallwood, 1 Jacob’s R. 552, 4 Cond. Eng. Ch. R. 262; Sexton v. Wheaton, 2 Wheat. R. 229, 246; Hinds’s lessee v. Longworth, 11 Wheat. R. 199; Reads v. Livingston, ubi supra; Hutchison v. Kelly, ubi supra; Hunters v. Waite, ubi supra; Bennett v. Bedford Bank, 11 Mass. R. 421; Salmon v. Bennett, 1 Conn. R. 525.
But though fraud in fact must thus be shown, it is not required that the actual or express intent be shown by direct proof. This would be unattainable in many cases, and if it cannot be given, it may be supplied by just legal implication from the evidence where the circumstances are such, or such marks .or ibadges of fraud are present, that the vicious intent .may and must be inferred. Lord Townsend v. Windham, 2 Ves. sen. 1; per Baldwin, J. in Hutchison v. Kelly, 1 Rob. R. 123, 134; and per Stanard, J. in Hunters v. Waite, 3 Gratt. 26, 72.
Where the grantor is not indebted -at the time of making a voluntary conveyance, no fraudulent intent can of course be shown as against existing creditors; and yet it .might be thoroughly vicious because prompted by a fraudulent purpose aimed at such as might become creditors thereafter. If the grantor, however, be indebted at the time,-but due provision be made for all existing debts, it is clear that all just imputation,of fraud in respect of them is out of the question. In Stephen v. Olive, 2 Bro. C. C. 90, a settlement had been made in favor of a .wife and child, by a party who was indebted .at the time in -about the sum of five hundred pounds, but the debt was amply secured by a .mortgage on .all the estate embraced by the settlement. The master of the rolls maintained the validity of the settlement.; thus in effect placing a settlement made by .a party indebted at the time, but whose indebtedness was duly provided for, upon the same footing as one made by a party not indebted *562 all. In George v. Milbanke, 9 Ves. R,. 189, 194, Lord Chancellor Eldon clearly recognizes this as the doctrine. He says that a provision in a volun^ary settlement for payment of existing debts, -would make such a settlement good against all future credi- ^ tors. In Reade v. Livingston, 3 John. Ch. R. 481, 501, Chancellor Kent says, the presumption of fraud as to subsequent creditors arising from the circumstance that the party was indebted at the time of the settlement, is repelled by the fact of those debts being secured by a mortgage or by a provision in the settlement. And in the case of Hester v. Wilkinson, 6 Humph. R. 218, this doctrine was carried still further. That was a case of a voluntary settlement on a wife and children, by a party indebted at the time, and the deed contained no provision for the payment of the debts, nor was there any mortgage or other security given by which they were provided; but the trustee admitted that it was the understanding and agreement of the parties that he should pay all existing debts by the sale of so much of the property as might be necessary for that purpose. The court held this to be sufficient, and declared that a voluntary settlement on a wife and children, if fair at the time, will be good against subsequent creditors of the party making it.
I think, therefore, that the case of a voluntary settlement upon a wife and children, although by a party indebted at the time, will, according to most approved authorities, stand on the same footing with such a settlement by a party not indebted, provided due and ample provision be made for the payment of such subsisting debts; and that in either case, to assail such a settlement successfully, an actual fraudulent intent must be manifested, or must be collected from the circumstances of the case. How it would seem at most a solecism to say of a conveyance, a primary object of which is to secure all existing debts, and for *563 which full provision is made, that it is fraudulent as to the creditors existing at the time. I agree, however, that a conveyance might purport to secure all existing debts, and yet by reason of terms and stipulations which it contained, intended or serving to hinder, embarrass or delay the creditors in the receipt of their respective debts, it might be held to be fraudulent and void as to them. But there is nothing of that kind in this case. The deeds contain no terms or stipulations which are unusual or unreasonable. Their provisions are such as might well be called for by the character of the subjects conveyed, the nature and amount of the heavy debts which it secured, and the circumstances under which they were contracted, the situation of the grantor and the condition of his family at the time they were executed. There is no such arbitrary power reserved to Platoff Zane to direct the management of the trust subject as is supposed by the counsel. He was not authorized to require any debt to be paid before judgment, nor were the trustees forbidden to pay any other debts than such as he might direct to be paid, before judgments were rendered upon them. This is an entire misapprehension of the true meaning of the provision alluded to, but it is not difficult to understand it. The debts to be provided for were numerous and heavy, amounting as it would seem, to a sum between fifty and seventy thousand dollars, and all contracted by an indiscreet, inexperienced and extravagant young man, within a period of a little over one year after he attained his majority. Many or some of these debts might be such as from an utter want of consideration, or because contracted under the influence of fraud or imposition, or for some other cause, he might not feel himself bound or willing to pay. Hence it was provided that if he objected to the payment of any debt claimed, the trustees against his will should not pay it *564 till a judgment was recovered upon it. And though he might direct a debt to be paid, yet if the trustees thought it was one which he was not legally bound to pay, they were not bound to pay'until a judgment should be recovered upon it; though if he requested a debt to be paid, and the trustee did pay it, the payment was not to be afterwards called in question; meaning of course' by Zane or those claiming under the settlement, the fund being confessedly more than adequate to the payment of all the debts. To these provisions no just exception can be taken : they were obviously intended to protect the trust subject against unfounded pretensions, and at the same time to give a reasonable assurance to the trustees of exemption from personal liability for the acts done by them in discharge of the trust.
As to the matters relied on as badges of fraud', they are either inapplicable or without'significance.- That the grantor was- largely indebted and-f the conveyance one of his whole estate, and that the creditors were hindered from- their ordinary remedies by judgment and execution, would only be of force where no provision or an inadequate one is made for the payment of the debts; Here it is full and ample, and no creditor provided for is complaining. That the deeds were voluntary and by one largely indebted, is a point I have already fully considered. That neither of the trustees was a creditor, that the consideration named was the inadequate and indeed nominal one of five dollars, and that the creditors are not named and were not consulted nor consenting to the terms of the deeds at the time of their execution, are matters which under the circumstances of this case, cannot be entitled to the slightest weight. Nor is the absence of any antenuptial agreement for a settlement, a circumstance' that will affect the validity of the settlement made, if it be otherwise free from objection. This is *565 sufficiently apparent from the cases already cited for other purposes; to which numerous others to the same effect might be added.
In what has been just said it has been assumed that a subsequent creditor may come with a fishing bill charging indebtedness to others at the time of the settlement; and upon proving the same, obtain relief directly against the subject. Yet this would seem for a long period not to have been a settled point. Chancellor Kent expresses the opinion that he will be entertained, and that his rights will not depend on the mere pleasure of the prior creditors whether they will or will not impeaeh the prior settlement. Reade v. Livingston, 3 John. Ch. R. 481. And such Judge Baldwin’.seems to think is the fair conclusion from the current of decisions; Hutchison v. Kelly, 1 Rob. R. 123. Sir William Grant was of a different opinion in Kidney, v. Coussmaker, 12 Ves. R. 136; and the opinion of Lord Rosslyn, referred to by him, in the case of Montague v. Lord, Sandwich, is adopted as the precedent which he professes to follow. In Lush v. Wilkinson, 5 Ves. R. 384, a bill of this kind was dismissed; the master of the rolls (Lord Alvanley) saying, “it is very extraordinary for a subsequent creditor to come with a fishing bill in order to prove antecedent debts.” He however gave the party liberty to file another bill. Of this ease, Sir William Grant remarked in Kidney v. Coussmaker, 12 Ves. R. 136, 155, that the only surprise lie felt at Lord Alvanley’s decree was, that his lordship did not dismiss the bill absolutely without giving leave to file another. And indeed in a recent ease decided in 1843, the vice chancellor remarked that a deed (of voluntary settlement) can only be set aside as fraudulent against creditors at the instance of a person who was a creditor at the time; though when it shall have been set aside, subsequent creditors may be let in. Ede v. Knowles, 2 Younge & Collyer 177, 21 Eng. Ch. R. 177.
*566 In Virginia, according to the opinions of Judges Stanard and Baldwin, it would seem that subsequent creditors will be let in upon a fund fraudulently alienated wherever the conveyance has been or might be successfully assailed upon the ground of actual fraud by prior creditors. Hutchison v. Kelly, 1 Rob. R. 123; Bank of Alexandria v. Patton, Ibid. 499.
There is certainly no proof in this case of any actual or "express fraudulent intent on the part of Platoff Zane in executing these deeds. Nor is such intent to be fairly deduced from the circumstances of the transaction. The provision for all existing creditors, ample and complete as it is, puts an end to all question so far as they are involved.,, The consideration of the settlement upon his wife and children, arising out of the natural duty to provide for their support, is one of the most meritorious character, entitled to the respect and support of the court of chancery, rather than to its frown and reprehension; and especially so, when we see the utterly improvident and wasteful habits of the grantor, and that their ruinous consequences to himself and his family were already beginning to cast their shadow before. Under the circumstances, there was nothing unreasonable in the settlement. On the contrary, it was perhaps the most judicious and prudent measure which he consummated during his brief but eventful career, after he attained his majority. Possession of the property was not reserved to nor retained by him. He did not continue to exercise acts of ownership over it, nor was he entitled to receive the rents or otherwise enjoy the proceeds. In short, not one of the usual marks or badges of fraud appears to be present. The only circumstance which can with any plausibility be relied on as evincive of a fraudulent intent, is the fact that the debt to the assignor of the appellant was contracted so shortly after the execution of the deeds. It is true, this may be looked to as evidence of the intent *567 of the party at the time. Walker v. Burrows, 1 Atk. R. 93. It is, however, but a circumstance to be considered in connection with all the others surrounding the transaction; nor do I understand Lord Hardwicke as intending anything more by the remarks made by him in the case just cited. So viewed, I regard it as insufficient to bring home the evil intent which will stamp the transaction with the character of meditated fraud. No attempt to deceive is manifested; no suggestion of falsehood or suppression of truth. The deeds were duly admitted to record upon the same day on which they were executed. Such notice as the public records can furnish was thus given to the world. The note was executed in Wheeling, where Platoff Zane with his family and the trustees all resided, and where the deeds were recorded. The appellant was the brother in law of Platoff Zane, and it must be presumed was fully aware of all that had taken place. The bill does not aver ignorance of the existence of the deeds on the part of Prentiss when he took the note, nor on the part of the appellant when he bought it of him. Considering the wild, extravagant and improvident habits of Platoff Zane, as evinced by the history of the preceding thirteen months, his giving a note for one thousand two hundred and seventy-five dollars two days after the execution of the deeds, or upon any day, could excite neither surprise nor suspicion. It might have been for a good or a bad consideration, and upon a transaction wholly originating after the execution of the deeds.
In every view, I think the attempt of the appellant to assail these deeds on the ground of fraudulent intent either as it respects existing creditors, or those who might thereafter become such, must be held to be ineffectual.
We come now to the second ground assumed, that *568 the note of Zane to Prentiss was for a pre-existing debt; and that it may, therefore, be regarded as provided for by the terms of the deeds. But the bill contains no such allegation. It does not set out the consideration or the origin of the note. It simply avers that Zane, being indebted to Prentiss in the sum of one thousand two hundred and seventy-five dollars, on the 9th of March 1837 executed his note for the payment of the same. This is but the usual and formal modé of stating the execution of a note in pleading. It is not understood to import the existence of the debt at a previous period, but only at the time of, and just before, the execution of the note. Its effect is to give the note and the debt which it evidences a contempoi’aneous origin. But if a prior existence of the debt had been formally alleged, the answer of Shriver the trustee, sufficiently puts it in issue to require the appellant to support it by proof. He says that he can neither admit nor deny the existence of the note, having no personal knowledge of it or of the consideration for which it was given, but calls for full proof touching the same. No proof whatever is furnished as to the origin or the consideration of the note. If it were for a pre-existing debt, that fact and the commencement of the debt might have been shown in evidence; and in the absence of any such proof, I think it clear that the origin of the debt must be referred to the date of the note.
. It is,said though that Mrs. Zane has not answered, and the allegations of the bill are as to her to be taken for confessed, and that therefore the pre-existence of the debt being admitted, the appellant is entitled to relief to the.extent of any interest she may have in the subject. I .have, however, already shown that there is no such allegation .in the bill: ¡and if there had been, the answer of Shriver the trustee, would .serve to put .it in issue for her .benefit, and that of all *569 others claiming under the deeds. For this purpose, he may properly be regarded as representing the cestuis que trust, and his answer will enure alike to the benefit of all.
The last ground upon which the pretensions of the appellant have been rested is, that under the provisions of the deeds Platoff Zane took such an Interest and property in the subject conveyed as may and should be subjected to satisfaction of such'debts as he might afterwards contract. The extent of the interest secured to-Platoff Zane was the right to occupy, jointly and in common with his wife and family, the residence and homestead to be purchased by the trustees for their benefit out of'the; trust funds, after satisfaction, of the debts, and to a support and maintenance during his life, with a power of appointment to.such of his children or descendants, and in such proportions as he might name; the fund to .go, in default of such appointment, to his children or descendants, and failing them, to his right heirs. His interest is for a bare maintenance, and continues during his life only. Beyond his own support, he can claim nothing from the fund. If the profits were more than adequate to the necessary wants of the whole family, including himself, and a surplus accrued for investment, he would be entitled to no benefit from it whatever. Upon :his death every vestige of interest, which he could be said to have in the subject, would absolutely cease‘and determine, and there would be nothing which nould be made the subject of pursuit by a creditor. The bill here was not filed .until after the death of Platoff Zane 5 and this is a sufficient answer upon .this point. Were he in full life, however, a not less sufficient answer to the pretension could be readily given. / The .interest of Platoff Zane under the deeds imports no such notion of property as involves a liability to his debts. This would violate the plain intention and provisions *570 of the déeds, and would utterly disregard the exigenc^es occasion which led to their execution.., purpose was to arrest a thoughtless, inexperienceq and’prodigal young man in the headlong career 0f extravagance and folly to which he would seem ^ » to have committed himself, the disastrous; results of which to' himself, and his wife and children could be too readily foreseen by his friends. They induce him. to make these deeds, conveying away his- whole estate, making full provision for all his then existing', debts-, but intentionally and formally disabling him from in any manner charging.-.the property thus conveyed withanydebts thereafter- to be contracted. Thia-he hadas right to'do, no --creditors- ■ existing at the time being im anyway injured, and no-fraudulent intent being fairly to -be imputed tu»the transaction. 1 Story’s Eq. Jur. § 356, and authorities cited in the note 5 Markham v. Guerrant, 4 Leigh 279. / Ahd although a support is reserved :to him in common with-his wife and children, out of the-surplus, after paying., all subsisting debts, yet- it is-;a leading idea of the deeds that the entire subject is- to be preserved by the'trustees free from the oontrol- of the cestuis que trust, or any of them, and. exempt from liability for any debts they might thereafter contract;; and thus all idea of a property in PlatoffiZane-in the subject, is utterly excluded by the very terms'-of the deeds; The interest which he possessed, such as it was* by virtue of his right to a subsistence out of the fund, in common with his wife and children* and joint and inseparable from theirs, is not such a property as can be reached in any form by his creditors-./The' case is fully within the principles of several, cases- which have been; decided in this court, and; which.may be regarded.'as-settling the law upon, the subject. Scott v. Gibbon, v. Munf. 86; Markham v. Guerrant, 4 Leigh 279; Roanes v. Archer, Ibid. 550; Perkins v. Dickenson, 3 Gratt. 335. The case of Markham *571 v. Guerrant will be found to be marked by circumstances very similar to those we find in ,the.case under consideration.
Upon none of the .grounds .assigned doll think.the pretensions of the appellant.can be maintained; andII am of opinion to affirm the decree.
The other judges concurred in the opinion of.Lee, X
Decree affirmed.